After a jury trial, the defendant was convicted of possession with the intent to distribute heroin, and possession of cocaine.[2] On appeal, he claims he received ineffective assistance from his trial counsel, and that there was insufficient evidence to support his convictions. We affirm.
1. Ineffective assistance. The defendant claims that trial counsel was ineffective for mentioning his post-Miranda invocation of his right to remain silent, for not requesting a limiting instruction, for referring to a prior hearing as a dangerousness hearing, and for not objecting to testimony about the defendant having been the target of the investigation. We disagree.
The defendant properly raised his ineffective assistance claim in a motion for new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). A judge may grant such a motion "if it appears that justice may not have been done." Id. We review the denial of a motion for new trial "only to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Grace, 397 Mass. 303, 307 (1986). And, because the motion judge was also the trial judge, his decision to deny the motion is entitled to "special deference." Commonwealth v. Shanley, 455 Mass. 752, 767 (2010), quoting Commonwealth v. Figueroa, 422 Mass. 72, 77 (1996).
During cross-examination of Detective Gracia, counsel impeached his credibility by showing that his testimony at trial differed from his testimony at a preliminary hearing as to who provided the defendant with Miranda warnings. In the process, counsel mistakenly revealed that the defendant had invoked his right to remain silent after receiving Miranda warnings. This, the defendant claims, amounted to ineffective assistance because it allowed the jury to draw an impermissible inference of guilt. We disagree.
In Doyle v. Ohio, 426 U.S. 610, 619 (1976), the United States Supreme Court held that the due process clause of the Fourteenth Amendment to the United States Constitution prohibits impeachment on the basis of a defendant's silence following Miranda warnings. The Court held that such impeachment was fundamentally unfair because Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. Id. at 618. "The animating concern in Doyle was that a defendant's silence in the wake of receiving the Miranda warnings may be nothing more than an exercise of those rights, which renders his silence 'insolubly ambiguous' on questions of guilt or innocence." Commonwealth v. Sosa, 79 Mass. App. Ct. 106, 112-113 (2011), quoting Doyle, supra at 617.
Thus, while counsel could have impeached Gracia regarding his prior inconsistent statement without mention of the defendant's exercise of his right to remain silent, there was no impeachment relative to that silence. In other words, albeit improper, counsel's misstep did not touch on the animating concern of Doyle because the defendant's silence was ancillary to, and not the focus of, the impeachment. This was not a situation where the defendant's post-Miranda silence was elicited to suggest he was guilty. Contrast Commonwealth v. Mahdi, 388 Mass. 679, 696-697 (1983). Moreover, the mention of the defendant's silence was brief, and it was not argued by the prosecutor in his closing argument. In this light, and in light of the strong evidence of the defendant's guilt outlined infra, the defendant was not likely deprived of a substantial ground of defense, see Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), nor was there a substantial risk of a miscarriage of justice. See Commonwealth v. Millien, 474 Mass. 417, 432 (2016).
The defendant also claims that counsel's decision to not request a curative instruction constituted ineffective assistance. We disagree. As an initial matter, it is important to note that counsel did not fail to request such an instruction. In fact, the judge offered to give a curative instruction, and counsel asked if she could have the night to consider the matter. The next day, counsel reported that she did not want the judge to give an instruction, and to just "leave it where it's at and not bring attention to it." Counsel then agreed with the judge's remark about letting "[s]leeping dogs lie."
In this posture, the question becomes whether counsel's strategic decision to forgo the instruction was manifestly unreasonable at the time the choice was made. See Commonwealth v. Velez, 479 Mass. 506, 512 (2018). As the judge properly determined, it was not. As the record reflects, counsel made a reasonable determination that a curative instruction would only serve to highlight the improper remark. This was not manifestly unreasonable, especially in light of the fact that there was no attempt to impeach the defendant with his silence. See Commonwealth v. Fredette, 396 Mass. 455, 466 (1985) (not manifestly unreasonable for counsel to conclude that "further pursuit of the matter in the hearing of the jury would only add emphasis and importance to the matter").
During counsel's attempt to impeach Gracia with his prior testimony regarding what address the defendant gave during booking, counsel inadvertently referred to the prior hearing as a "dangerousness hearing." This, the defendant claims, also constituted ineffective assistance. We disagree. While counsel's unintended remark was not strategic, it also did not deprive the defendant of a substantial ground of defense. See Saferian, 366 Mass. at 96. Indeed, the remark was isolated and unadorned with any prejudicial detail as to the outcome of the hearing. Moreover, as the judge noted, the jury's acquittal of the defendant on the firearms charges lends credence to the notion that the jury were not influenced by any inference that the defendant was dangerous. See Commonwealth v. Dupont, 2 Mass. App. Ct. 566, 572 (1974). Furthermore, in his charge to the jury, the judge instructed that the fact that there were any preliminary hearings leading up to the trial was not evidence and not for the jury's consideration.
Finally, the defendant claims that counsel was ineffective for not objecting to the admission in evidence of the testimony that the defendant was the target of the search warrants and that Gracia had been conducting surveillance of the defendant for weeks prior to the execution of the search warrants. We disagree. Any objection to this testimony would have been overruled. See Commonwealth v. Cohen, 412 Mass. 375, 392 (1992) (failure to make futile objection cannot amount to ineffective assistance of counsel). As the judge noted, "the disputed testimony involved background information that was necessary to provide context for why the defendant and the Maxfield Street residence were of interest to the police." In fact, an investigating officer should be allowed "some explanation of his presence and conduct." Id. at 393, quoting McCormick, Evidence § 249, at 734 (3d ed. 1984). The admission of such information falls well within the judge's discretion. See Commonwealth v. LaVelle, 33 Mass. App. Ct. 36, 43 (1992), S.C., 414 Mass. 146, 155-156 (1993).[3]
2. Sufficient evidence. The defendant also claims there was insufficient evidence that he constructively possessed the drugs found at the Maxfield residence. To prove constructive possession of drugs, the Commonwealth must establish the defendant's "knowledge coupled with the ability and intention to exercise dominion and control." Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004), quoting Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). Here, the evidence was sufficient.
In the weeks leading up to the search, the police saw the defendant on several occasions coming and going from the Maxfield Street residence, and he showed up at the residence when the search was underway. The defendant's wallet was found on the bed, and the wallet contained his credit card. On top of the dresser was a prepaid loadable Walmart MoneyCard addressed to the defendant at the Maxfield residence. In a dresser located in the closet, the police found a black folder containing photographs of the defendant, and a white binder with correspondence addressed to the defendant and his girl friend, photographs of the defendant, and his birth certificate. There were also men's clothing and the defendant's expired identification card found in the same drawer where the container that held the heroin was discovered. Another one of the defendant's expired identification cards was discovered in a bureau drawer that also contained a digital scale and additional photographs of the defendant and his girl friend.[4]
Given the above evidence, viewed in the light most favorable to the Commonwealth, the jury were entitled to draw the reasonable inference that the defendant had knowledge of the narcotics in the bedroom. See Brzezinski, 405 Mass. at 409. Also, based on the above, the jury could infer that the defendant had the ability and intention to exercise dominion and control over the narcotics. See Commonwealth v. Rarick, 23 Mass. App. Ct. 912, 912 (1986). The motion for required findings of not guilty was properly denied.
Judgments affirmed.
Order denying motion for new trial affirmed.

The defendant was acquitted of unlawful possession of a firearm without a firearm identification card, and of unlawful possession of ammunition.

The evidence was also properly admitted to establish, in part, that the defendant lived at the Maxfield residence, and why a search warrant issued for that address.

Contrary to the defendant's claim, which fails to view the evidence in the light most favorable to the Commonwealth, the fact that his identification cards were expired does not diminish the reasonableness and permissibility of the inference that they connect the defendant to the area where the narcotics were discovered.