After a jury trial in the Superior Court, the defendant was convicted of possession of a firearm in the commission of a felony, G. L. c. 265, § 18B ; possession of ammunition without a firearm identification card (FID card), G. L. c. 269, § 10 (h ) ;[2] possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (c ) ; unlawful distribution of cocaine, G. L. c. 94C, § 32A (c ) ; unlawful possession of marijuana with intent to distribute, G. L. c. 94C, § 32C (a ) ; negligent operation of a motor vehicle, G. L. c. 90, § 24 ; failure to stop for a police officer, G. L. c. 90, § 25 ; and resisting arrest, G. L. c. 268, § 32B. In this consolidated appeal from his convictions and the denial of his motion for new trial, the defendant's arguments pertain only to the denial of his motion. He claims that he is entitled to a new trial based on newly discovered evidence. We affirm for substantially the same reasons stated by the motion judge, who was also the trial judge.
Background. In January, 2014, the Springfield police department conducted an undercover drug operation at a residence. As Detective Mark Templeman remained in his parked vehicle near the residence, he was joined by a cooperating witness. After approximately twenty minutes, the defendant arrived driving a Mercury Mountaineer. The cooperating witness exited Templeman's vehicle. The defendant and his passenger exited the Mountaineer and entered the residence with the cooperating witness while Templeman remained in his vehicle.
Sergeant Steven Kent, who was conducting surveillance of the undercover operation, observed the defendant carrying a gray backpack as he exited the vehicle. A few minutes later, the cooperating witness returned to Templeman's vehicle and provided him with two baggies containing a white powdered substance that he had obtained in the residence in exchange for forty dollars of prerecorded "buy money" provided by Templeman. Meanwhile, the defendant and his passenger were observed leaving the residence and returning to the Mountaineer. The Mountaineer drove away. Kent then requested that another officer locate the Mountaineer.
When the officer located the Mountaineer a few minutes later, he activated his cruiser lights and siren. The defendant did not pull over, and, after a short pursuit, the defendant lost control of the Mountaineer and drove onto a residential lawn. The defendant fled from the vehicle on foot while carrying a gray backpack. After searching for the defendant for approximately twenty minutes, officers apprehended him and took him into custody. Nearby, officers recovered the gray backpack, which contained two firearms, ammunition, and thirteen bags of marijuana. A search of the defendant's person also yielded $650, which included the forty dollars of prerecorded buy money that Templeman had given the cooperating witness to purchase the cocaine from the defendant.
After the defendant was transported to the police station in a police cruiser, a small black pouch with two baggies of cocaine was recovered from the backseat of the cruiser. The money that had been seized from the defendant was brought to the police station and divided: the forty dollars in buy money was placed in Sergeant Kent's desk to be used for future drug buys, and the balance of $610 was packaged, labeled, and dropped through a mail slot into the evidence vault. The suspected cocaine and marijuana were delivered to the University of Massachusetts forensic laboratory in Worcester by Officer Kevin Burnham, the department's then-acting evidence officer. They were analyzed and confirmed to be controlled substances. The firearms and ammunition recovered from the gray backpack were tested by the State police.
At the trial of this action in June, 2015, Detective Templeman testified on both direct and cross-examination that the money seized from the defendant at the time of his arrest was delivered to the Springfield police department evidence room, and later could not be located. He further testified that an audit was being conducted at the police department and that a criminal investigation was underway regarding the missing money. Sergeant Kent, who was by then a lieutenant, also testified that money was missing from other cases and that a criminal investigation was underway. He further testified that he was unaware of other types of missing evidence.
Approximately six months after the defendant's convictions, Officer Burnham was indicted on larceny charges stemming from the evidence of missing money. The principal basis for the defendant's new trial motion was that Burnham likely stole money that was confiscated from the defendant and that constituted evidence in his case.
Discussion. 1. The denial of a motion for new trial is reviewed only for "a significant error of law or other abuse of discretion." Commonwealth v. Weichell, 446 Mass. 785, 799 (2006), quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986). Where, as here, the motion judge was also the trial judge, his views are accorded "special deference." Commonwealth v. Sullivan, 469 Mass. 340, 351 (2014).
To prevail on a motion for new trial on the basis of newly discovered evidence, the defendant must meet a two-part test. The defendant must demonstrate, first, that the evidence was in fact newly discovered in the sense that it was unknown to the defendant or his counsel at the time of trial and that it was not reasonably discoverable, and, second, that the evidence "casts real doubt on the justice of the conviction." Grace, 397 Mass. at 305-306. New evidence will cast real doubt on the justice of the conviction if there is a "substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." Id. at 306. The standard is not whether the verdict would have been different, but whether the evidence probably would have been a "real factor in the jury's deliberations." Id.
2. Here, the parties do not dispute the judge's finding that Burnham's alleged connection to the missing money evidence and details of the investigation into his purported misconduct constitute newly discovered evidence. We therefore review whether the judge erred or abused his discretion in determining that the defendant had failed in his burden to establish that the newly discovered evidence casts real doubt on the justice of the conviction. See Commonwealth v. Figueroa, 422 Mass. 72, 79 (1996).
The judge found that, at the defendant's trial, the jury heard testimony that the money seized from the defendant was missing and that there was an ongoing criminal investigation to determine who had stolen it. He inferred that the jurors therefore "understood that there appeared to be some tampering with evidence seized from Rosa within the Springfield Police Department." Furthermore, as the money evidence was only connected to the cocaine charges, the judge determined that only those charges would be impacted.[3] He recounted the circumstantial evidence related to the cocaine charges and concluded that the evidence was strong, such that the newly discovered evidence would not likely have been "a real factor in the jury's deliberations." Grace, 397 Mass. at 306.
On appeal, the defendant contends that the judge viewed the impact of the newly discovered evidence too narrowly. He argues that, had the jury been informed of Burnham's indictment for evidence tampering "it would have made defense counsel's closing argument significantly more powerful and ... would have shown [sic ] significant additional doubt in the minds of the jurors about the general practices of the Springfield Police Department." The defendant suggests that the introduction of evidence related to Burnham's alleged tampering with money evidence would have allowed the jury to infer that Burnham engaged in universal evidence tampering, thereby "cast[ing] significant doubt on the integrity of all evidence offered by the Springfield Police Department in criminal proceedings."
We need not quarrel with the defendant's general proposition that identification of the money evidence thief as the department's long-time evidence officer likely would have tarnished the reputation of the entire department in the eyes of the jurors. Still, we cannot say that this generalized pall over the department would likely have caused the jury to view the evidence in this case differently. Evidence supporting the defendant's convictions was strong. See Commonwealth v. Ellis, 475 Mass. 459, 480 (2016) ("The determination of whether newly discovered evidence would have been a real factor in the jury's deliberations requires that the new evidence be considered in light of the totality of the evidence presented at trial ..."). The evidence of missing money did not directly impact the integrity of the convictions; likewise, Burnham's indictment did not undermine the credibility of the testimony of the other officers in the case.[4] We discern no abuse of discretion in the judge's determination that the newly discovered evidence does not cast real doubt on the justice of the convictions.
Judgments affirmed.
Order denying motion for new trial affirmed.

After his conviction of the underlying offenses, the defendant pleaded guilty to the enhancement of the unlawful possession of ammunition conviction on the basis of a previous conviction of a serious drug offense or violent crime.

The evidence presented at trial, in conjunction with the evidence provided in postconviction discovery, suggests there had only been tampering with money evidence. Furthermore, at the motion hearing, defense counsel conceded that "there's nothing in the Grand Jury minutes to suggest that Detective Burnham tampered with any evidence other than money evidence." Even if we were to accept the defendant's suggestion that Burnham's alleged theft of money evidence raises concern for the handling of the drug evidence in this case, which includes both cocaine and marijuana, our analysis would be same.

For the first time on appeal, the defendant raises the claim that the newly discovered evidence diminished the credibility of key Commonwealth witnesses, Kent and Templeman. We reject the claim for substantially the reasons set forth in the Commonwealth's brief.